## Sims *v.* State of Indiana.

[No. 24,701. Filed April 22, 1925. Rehearing denied February, 24, 1926.]

1. CONSPIRACY.—*Evidence held to sustain conviction of conspiracy to embezzle bank certificates and not conspiracy to steal them.*—Evidence held sufficient to sustain conviction of conspiracy with bank cashier to embezzle certificates of deposit, as against contention that proof established conspiracy to commit larceny of the certificates and not embezzlement. p. 313.

2. CRIMINAL LAW.—*Requested instructions in prosecution for conspiracy with a bank cashier to embezzle certificates of deposit held properly refused because invading province of jury.* —In a prosecution for conspiracy with the cashier of a bank to embezzle certificates of deposit, there was no error in refusing to give instructions that if the alleged conspirators, in good faith, took the certificates and tried to sell them for the purpose of averting a failure of the bank caused by overdrafts of the conspirators, then the element of intent to commit a felony would be lacking, and they would not be guilty of criminal conspiracy, as to have given them would have invaded the province of the jury. p. 317.

3. CRIMINAL LAW.—*Presumption of innocence continues until the close of the trial and jury should weigh the evidence in the light of such presumption and endeavor to reconcile the evidence with the presumption.*—The presumption of innocence continues until the close of the trial, and the jury should weigh the evidence in the light of such presumption, and endeavor to reconcile all the evidence with the presumption of innocence, if it can. p. 321.

4. CRIMINAL LAW.—*Instruction on presumption of innocence of defendant held inaccurate but harmless.*—An instruction that the presumption of innocence of the defendant must be indulged "until the state by its evidence convinces you beyond a reasonable doubt of his guilt," while not strictly accurate, nor exactly equivalent to the language of the statute (§2302 Burns 1926, §2137 Burns 1914), was not reversible error in view of other instructions on the same subject. p. 321.

5. CRIMINAL LAW.—*Defendant cannot complain that an instruction was incomplete, but must request the giving of a complete instruction.*—A defendant cannot complain that an instruction did not state the law as fully and completely as it should have done, as his remedy, if it was correct as far as it went, was to request the giving of a complete instruction. p. 321.

From Bartholomew Circuit Court; *John W. Craig,* Special Judge.

James M. Sims was convicted of conspiracy to embezzle certificates of deposit issued by the cashier of a bank, and he appeals. *Affirmed.*

*Joseph R. Morgan, C. J. Kollmeyer* and *Fred A. Eldean,* for appellant.

*U. S. Lesh,* Attorney-General and *Connor D. Ross,* Deputy Attorney-General, for the State.

EWBANK, J.—Appellant was prosecuted on a charge, as stated in the fourth count of the affidavit, in effect, that on or about September 20, 1923, at Bartholomew county, Indiana, he and the cashier of the Hope State Bank feloniously and knowingly conspired and agreed together unlawfully and fraudulently to take, purloin, secrete and appropriate to their own use ten certificates of deposit of said bank each calling for $3,000, that were of the total value of $30,000, which came into the possession of said cashier by virtue of his office as cashier of the bank, and of which he was entitled to have control as such official of the bank, to the possession and ownership of which said bank was lawfully entitled, and that appellant did feloniously and knowingly agree with said cashier that he would aid and abet the cashier to take, purloin, secrete and convert the same. Other counts charged the defendants with conspiracy to steal the same certificates, but appellant, who was tried separately, was only found "guilty of conspiracy to commit the felony of embezzlement as charged in the fourth count," etc. Overruling the motion for a new trial is the only error assigned, under which appellant challenges the sufficiency of the evidence to sustain the verdict, and complains of the giving and refusal to give certain instructions.

There was evidence, which the jury may have be-

lieved, as follows: That appellant's codefendant,
Romie K. Ferry, was and for several years had

1. been the cashier of the Hope State Bank, at
Hope, in Bartholomew county, Indiana, and, as
such officer, had the custody, possession and control, on
behalf of the bank, of all its property and assets, with
power to execute and issue certificates of deposit in
its name binding it to pay the sums of money therein
certified to have been deposited; that appellant was the
president and manager of the Republic Refining Com-
pany, which operated a refinery and a number of "fill-
ing stations" for the sale of gasoline and oil, and Romie
K. Ferry was a director of said company from the time
of its organization in February, 1923, until September
8, following; that appellant was also interested in the
operation of another refinery not owned by said com-
pany; that the Republic Refining Company had an ac-
count with the Hope State Bank beginning March 5,
and appellant had an account beginning June 21, 1923;
that, during the summer, appellant and the Republic
Refining Company made large deposits, almost daily,
against which they drew checks; that both of the ac-
counts were operated together by appellant in conduct-
ing the business of the company; that in July, 1923,
appellant made an arrangement with the cashier of a
bank in Pennsylvania to draw on him through the Hope
State Bank, sending him checks to meet the drafts, and
there were many such transactions in the next three
months; that deposits were made by appellant in the
Hope State Bank of many checks and notes, either to
his own account, or to the account of the Republic
Refining Company, or for which certificates of deposit
in the name of one or the other were taken, which
checks and notes were dishonored, and were returned
to the bank, as a liability of the depositor; that by
reason of these facts, appellant, on September 13, 1923,

and thereafter, was liable to the Hope State Bank, as
for an overdraft that amounted to $28,000, and this
was true at the time when appellant was trying to sell
the certificates of deposit mentioned in the affidavit;
but that the books of the bank did not show this con-
dition, because $28,000 of checks and drafts deposited
by appellant that had been dishonored were not charged
back on the books; that in May, 1923, appellant pro-
cured said Ferry to execute and issue, as cashier of the
Hope State Bank, two certificates of deposit for $5,000
each, payable to appellant, which he carried away, in-
dorsed, and negotiated by depositing them as security
for the performance of a ninety-nine year lease on
certain lots in Indianapolis that he had taken in his
own name, which obligated him to erect a building on
the leased property; that he did not give any consider-
ation for said certificates of deposit until after they had
been so negotiated in exchange for the lease, and then
he had the lease recorded as made to himself, and did
not assign it on the record, but only sent to Ferry an
unofficial copy of it, with his note payable to R. K.
Ferry and a paper purporting to be an assignment of
the lease to Ferry, individually, which was not acknowl-
edged, and therefore could not be recorded; but other-
wise he gave the bank nothing; that these certificates
of deposit were still outstanding in the hands of the
lessor at the time of the trial; that no record of them
was made at the bank, and its president did not learn
they had been issued until after October 15; that on
September 8, 1923, appellant and Ferry and other hold-
ers of stock to the amount of fifty-three per cent. of the
capital stock of the Republic Refining Company as-
signed all of their stock to J. P. Hutchens upon the
execution by E. W. Bowen of a promise in writing to
make a loan to said company of $15,000 "to be secured
by mortgage on the assets of said company for the pur-

pose of enabling said company to carry on its business,"
and subject to the conveyance to appellant of all in-
terest, as lessee, in "the refining property at Portland
and the three filling stations located at Portland, Win-
chester and Decatur," all liabilities of such refinery to
be assumed by appellant; that five days later, on Sep-
tember 13, a receiver was appointed for the Republic
Refining Company, and on October 5, 1923, it was ad-
judged bankrupt by the federal court; that about the
middle of September, 1923, appellant and Ferry had
dinner together, and appellant suggested to Ferry that
he issue some certificates of deposit, which appellant
would sell to his friends, and use the money to take up
the overdrafts of appellant and the Republic Refining
Company; that appellant said he needed the money at
once, that certificates of deposit were easily handled,
and that they should be for $3,000 each, and the due
dates should be spread over a year; that the next morn-
ing, at the bank in Hope, Bartholomew county, State
of Indiana, Ferry made out ten certificates of deposit
for $3,000 each, using blanks taken from an old book
of forms that had been discarded by the bank, (except
that he did not fill in the date) and signed them as
cashier of the Hope State Bank, and sent them to ap-
pellant, who received them some time between the
eighteenth and twenty-fifth of September, 1923; that
appellant filled in a different date on each certificate,
ranging from May 5, to September 17, 1923, and then
took them to Pittsburgh and New York, the first week
of October and tried to sell them at each place, and
from New York sent Ferry a telegram asking the bank
to certify that his check for $500 was good, which was
done, and the bank had to take up the check; that after
ten days in these two places, he returned home, and two
days later visited Homer Cutsinger in Bartholomew
county, State of Indiana, and there offered to sell him

the ten certificates of deposit of the face value of $3,000 each for $20,000; that these certificates were of the value of $30,000; that the blanks on which they were written and the completed certificates belonged to the bank; that appellant left the certificates in the possession of Homer Cutsinger; that four days later, appellant went to see Martin Cutsinger, the father of Homer, at Edinburg, Indiana, and made him an offer to accept $20,000 for them, saying that he wanted to use the money in the oil business, the oil refinery; that Martin Cutsinger and his son took the certificates to Hope, and there asked Mr. Ferry if that was his signature, and he said it was, and that the bank had some collateral coming due near the same time as the certificates, and they would be taken up as the collateral came due; that this conversation was in Bartholomew county, State of Indiana; that the next day Martin Cutsinger asked the president of the bank about these certificates, and the president then for the first time learned of their existence; that nothing whatever had been given to or received by the Hope State Bank for these certificates, and no record of them had been made in the books of the bank; that appellant then had them in his possession at Portland, Indiana; that the president of the bank then asked the cashier if appellant had $30,000 of certificates and the cashier said, "No," but afterward said he would telephone appellant and get them back; that the cashier called him at Portland, and the next day appellant brought the certificates to Edinburg and returned them to the cashier, who took them back to the bank and gave them to its president; that soon afterward the president and secretary of the board of directors of the Hope State Bank went to Indianapolis, at the invitation of appellant, and met him in the office of the Republic Refining Company; that appellant said he wanted to fix up his overdraft, and would put

it back by instalments if given plenty of time; that appellant said the $30,000 of certificates of deposit were all there were; that the secretary said to appellant, "Don't you realize the position you put Ferry in? He is financially bankrupt," and appellant replied "I am sorry for that. I am the fellow who got him to do it"; and said that the cashier had issued the certificates and given them to him to sell to cover the overdraft. This evidence sufficiently supports the inference which the jury drew that appellant was guilty of conspiracy to commit the crime of embezzlement, as charged. Appellant insists that if the evidence proved him and the cashier guilty of any crime at all it was conspiracy to commit the crime of larceny, saying that a taking with felonious intent is not embezzlement, but constitutes larceny. But there was ample evidence that these certificates were lawfully in the possession and under the control of Ferry, as cashier, from the beginning, so that he already had them in his possession and under his control when the conspiracy unlawfully to appropriate them was formed. The president of the bank, Arthur May, testified that, during the time Mr. Ferry was the cashier of the Hope State Bank, he was the custodian of the money, papers, certificates of deposit and similar property of the bank, and there was other evidence to the same effect. The verdict is sustained by the evidence.

Appellant asked an instruction .(No. 3) that if the jury found the bank to have been financially embarrassed and in danger of failing by reason of overdrafts of appellant and his company which they were unable to pay, and if appellant and the cashier, "in good faith," took the certificates and "agreed to and tried to sell them and place the proceeds of such sales in the bank as funds of the bank for the purpose of averting the failure of said bank," then the

element of intent to commit a felony was lacking, and appellant was not guilty of criminal conspiracy. This instruction was properly refused. If given, it would have invaded the province of the jury, who would have a right to find from the evidence that the defendants had conspired together to sell for only $20,000 certificates by which the bank would become bound to pay $30,000, and that they intended to put the proceeds into the bank and prevent its failure, in order that appellant might continue to withdraw for the use of himself and his company money in excess of the amounts deposited by them; and, if that were true, the court could not say, as matter of law, that the element of felonious intent was lacking. For the same reason, the court properly refused to give a requested instruction declaring that appellant was not guilty of a criminal conspiracy to commit a felony if the cashier knew the bank was in failing circumstances, and "in good faith for the purpose of raising money for said bank to avert its failure" agreed to and did send to appellant the certificates of deposit "to be sold by him for the use and benefit of said bank," and that appellant "in good faith agreed to aid said bank by the sale of said certificates, and in good faith actually endeavored to sell them and honestly and in good faith intended to give the proceeds of such sale to the cashier of said bank for the use of said bank." If appellant and the cashier had caused the funds of the bank to become so depleted by overdrafts not shown on its books that it was in danger of failing, and then agreed to take and sell assets of the bank for a fraction of their value, and to use the money in concealing the fact that there had been an overdraft, whether or not they had a felonious intent in so doing would be a question for the jury, even though it clearly appeared that the proceeds received for such assets were to be returned to the cashier and

put back into the bank. It was not error to refuse to give these instructions.

The court gave instructions asked by appellant which sufficiently advised the jury, in effect, that "an actual criminal or wrongful purpose and intent must accompany the agreement" in order to constitute criminal conspiracy, that without such intent, the crime charged could not be committed, that an agreement made honestly and in good faith but in ignorance or under a misconception could not constitute a criminal conspiracy, even though it were to do acts the result of which would be unlawful, and that the jury could not find appellant guilty if they entertained a reasonable doubt as to his having entered into an agreement with R. K. Ferry to commit one of the felonies charged, with the intent to cause a loss by the Hope State Bank of money or property, as alleged. No other instructions were asked by appellant, except as set out above.

The instructions given by the court, in part, were as follows: "(4) In this case the defendant is not bound to prove anything. The burden is upon the state to establish his guilt as to the offense as defined to you in this case, beyond a reasonable doubt, whether or not he explains to your satisfaction any fact or facts proven against him. (5) The defendant is presumed to be innocent of the crime with which he is charged and this presumption is to be indulged in step by step throughout the trial until the state by its evidence convinces you beyond a reasonable doubt of his guilt. You should weigh the evidence in the light of this presumption and if you can reasonably and fairly reconcile all of the evidence given with the assumption of innocence it is your duty to do so. *. * *. (6) Proof beyond a reasonable doubt is proof to such an extent that a prudent man would feel safe in acting upon it in matters of the highest importance to himself, where he was

under no compulsion to act at all * * *. (7) A reasonable doubt may arise from the evidence as well as from a lack of evidence, and may be thus defined: The rule touching reasonable doubt is a fair, reasonable and practicable rule for the guidance of practical men, when engaged in the solemn and important duty of assisting in a fair, honest and impartial enforcement of the criminal laws of our state * * *. (8) Each juror acts for himself in coming to a conclusion, and acts on his own conviction. If therefore, any juror in this cause, after considering all of the evidence, the argument of counsel on both sides, and the instructions of the court, and then having consulted and deliberated with his fellow jurors should yet not be convinced beyond a reasonable doubt of the defendant's guilt, it would be his duty to refuse to vote for a conviction * * *. (23) To justify a conviction of the defendant, in this case, on circumstantial evidence, the circumstances disclosed by the evidence must be of such character and strength as to exclude every reasonable hypothesis except that of the defendant's guilt. If the circumstances disclosed by the evidence can be explained on any reasonable theory consistent with defendant's innocence he is entitled to an acquittal * * *. (28) In determining his (defendant's) credibility as a witness all reasonable doubts are to be resolved in his favor, whether they arise as a result of the evidence, from the absence of evidence, from conflicts in the evidence, or are created by the testimony of the defendant alone. And if on the testimony of the defendant, alone, a reasonable doubt has been created and remains in the mind of any one or more of the jury of the truth of any material allegation in the affidavit, the jury would not be warranted in convicting him. (29) The defense has introduced evidence for the purpose of proving that prior to the commission of the alleged of-

fense the character of the defendant for honesty was good. The law presumes that one whose character for honesty is good is less likely to commit a crime as that charged in the affidavit, than one whose character in that respect is bad. It is proper, therefore, that you should consider this evidence in connection with all the other evidence in the cause in determining the guilt or innocence of the defendant, and that you should give it such weight, for that purpose, as you think it is entitled to receive; and if, from all the evidence in the cause, including the previous character of the defendant, you have a reasonable doubt of his guilt, you should acquit him * * *."

Appellant complains of that part of instruction No. 5 which stated that the presumption of innocence, "is to be indulged in step by step throughout the trial until the state by its evidence convinces you beyond a reasonable doubt of his guilt." The statute provides, and for many years has provided, that "a defendant is presumed to be innocent until the contrary is proved." §2302 Burns 1926, §2137 Burns 1914, §1824 R. S. 1881, 2 R. S. 1852 p. 375, §104. The instruction given was not strictly accurate. To say that the presumption of innocence is to be indulged until the state by its evidence convinces the jury beyond a reasonable doubt of defendant's guilt is not exactly the same as to say that he is presumed innocent until the contrary is proved. But, as the statement of a mere general proposition, the instruction would seem to be quite as favorable to the defendant as the statute. The presumption of innocence continues until the close of the trial, and the jury should weigh the evidence in the light of such presumption, and endeavor to reconcile all the evidence with the presumption of innocence, if they can. And, on due and proper request, it is the

3-5.

duty of the court to give an instruction to that effect. *Farley* v. *State* (1891), 127 Ind. 419, 26 N. E. 898. And the court of its own motion, as we have seen, did give instructions stating that the jury should weigh the evidence in the light of the presumption of innocence, and reconcile the evidence on the assumption of innocence if they could, and that if any juror, after considering all of the evidence, the argument of counsel on both sides, and the instructions of the court, and having consulted and deliberated with his fellow jurors, should not be convinced beyond a reasonable doubt of the defendant's guilt, it would be his duty to refuse to vote for a conviction.

But appellant did not ask for an instruction stating how long the presumption of innocence would continue. And, in view of the instructions which the court gave, telling the jury that the defendant was not bound to prove anything, that the burden was on the state to prove his guilt beyond a reasonable doubt, whether he explained anything or not, that, if possible, the evidence should be reconciled on the assumption of his innocence, that if a juror, after considering all the evidence, had a reasonable doubt of defendant's guilt, he must not vote for his conviction, that the circumstances proved must exclude every reasonable hypothesis except defendant's guilt, and, if they could be explained on any reasonable theory consistent with his innocence, he was entitled to an acquittal, and the repetition, over and over, of the direction to acquit if a reasonable doubt remained as to his guilt, and in view of the evidence to which the instructions had reference, we do not think that appellant could have been harmed by the inaccuracy complained of. One who did not ask for further instructions covering a subject will not be heard to complain that an instruction which did not misstate the law to his prejudice as far as it went failed to state

it as fully and completely as it might have done. *Cleveland, etc., R. Co.* v. *Harrison* (1912), 178 Ind. 324, 327, 98 N. E. 729; *Cleveland, etc., R. Co.* v. *Smith* (1923), 192 Ind. 674, 138 N. E. 347, 350. The judgment is affirmed.